Technology and FSP and SPI Electronic and Liancheng Electronic Enterprise, 02, 13, 02, 03 and 04. I see three lawyers here and I think you have very wisely chosen not to have three lawyers for 15 minutes. I understand Mr. Young is taking four and then your rebuttal will be split four and one. Yes, Your Honor. Please proceed. Good morning, Your Honors. The fundamental error in this case was that an erroneous doctrine of equivalence instruction was given to the jury, which allowed the jury in this case to rule that there was infringement, despite the fact that due to the amendment that was made to the patent here, the doctrine of equivalence should not have been allowed under FESTO. The patent application here was granted specifically because… Can you sort of cut to the chase? There are a lot of issues here and just explain to us in slowly and in very simple language why the equivalence in question here are not tangential to the reason for the amendment. It's not tangential because the Gradsky prior art, according to the expert that was presented by the plaintiff here, always controlled the lamp power and there was no time at which there was not control. The amendment was added in order to provide that there would be control only if the feedback signal was above the threshold. The alleged equivalent… The Gradsky patent expressly in Column 6 refers to the two instances in which the equivalents are claimed, lamp out and start up. The Gradsky patent… In Column 6 in Line 5 and they've had a lamp short circuit and there's a lot of discussion about what's happening in the lamp short circuit. And then down at Line 63 it talks about when during start up initially. See what I'm talking about? Yes, Column 6 Line 6. And are they telling me that they're controlling the power during those two occasions? What we have in the record, Your Honor, is… What's all that language in Column 6 all about? That language in Gradsky mentions the start up period. It does not preclude and there's nothing in there that says… In the event of a lamp short circuit, it tells you the large current flows and I tried to trace it through, you know, all the graphs and whatnot. What's happening? Does that mean that in the event of lamp short circuit, there's power being controlled in Gradsky? What we have in the record, Your Honor, is Mr. Ryan's testimony. I can't answer that question. I mean… Do you understand this science? Your Honor, what we have in the record is experts… My simple question is, I mean, your other side is arguing that lamp short circuit and during start up are equivalents that they're entitled to claim. They make the reference on page 47 or so in their red brief that these two occasions, lamp out and start up, were not referenced, were not disclosed in the prior order.  Page 47 of their brief. And what I'm saying is Gradsky talked flat out about lamp short circuit and start up. He did. As did the patent that's at issue in this case. And in either case… If that means, if Gradsky is talking about lamp short circuit and lamp start up, that they're monitoring at that time, then that's the complete and full answer to the tangentiality issue. It is absolutely. But I'm asking you, what is the science? Explain to me, in the event of lamp short circuit, what happens in Gradsky? Your Honor, there's nothing in the record that I know of. You have to read the claim. I'm asking you simply to read the claim. I mean, read the spec. That's, you know, column 6 starts at 5 and the whole business about lamp short circuit stops at line 61 and then they start talking about start up. Your Honor… Either they're monitoring current during lamp out or in start up or they're not in Gradsky. And the testimony below from O2 Micro's expert, Ryan, was that in Gradsky there is always control over power and… Including during the two occasions that are asserted as the equivalents, which are claimed to be tangential to the reason for the amendment. Absolutely. And I'll point to page 536 of the appendix in which Dr. Ryan states, Gradsky discloses an inverter system with a feedback for always controlling lamp power. At A24629, he stated in his deposition, there was no time when there was not control in the Gradsky patent. So I think you have the answer there as far as the record of this case is concerned. But does your argument on equivalence depend on that? I mean, page 35 of your brief, you acknowledge it may well be that the O2 Micro did not have to surrender the full terrain it surrendered. In other words, I read you as saying, even if Gradsky didn't explicitly cover the start up or the other period, it would matter because they didn't carve it out. Correct, Your Honor. There are two different arguments here. If the prior Gradsky patent did contain the equivalent issue, it's clear under Festo and this court's cross medical decision, et cetera, that there could be no tangentiality here. The second argument is, even if it's not clear that the prior art patent contained the exact equivalence at issue, and even if there could have been theoretically some claim amendment made that would have carved out the equivalent at issue, that was not done here. And this subject of the levels and the effect on the ability to control is not tangential to the amendment. It's the exact issue on which the amendment was made. The fact that the alleged equivalence here, which is that an insignificant feedback signal is the equivalent of no feedback signal, or imperceptible control is the equivalent of no control, which wasn't made below, by the way, so this argument shouldn't even be considered by this court. But assuming that the court would consider that argument, it is not a tangential equivalent to say that insignificant control is the equivalent of no control. For one thing, that doesn't really state an equivalence argument because the insignificant control is not a claim element. The more important issue, though- Isn't the strongest arrow in your quiver, in essence, a procedural arrow? Sure, the matter is that under Festo, the burden lies with your adversary, your patentee, to demonstrate that the equivalence are tangential to the reason for the amendment. Correct. That burden requires your adversary to point to objective evidence, intrinsic evidence, in the final history. Correct, Your Honor. Where the applicant stood up and said, I got a narrowing amendment, I'm worried about surrender of scope, here's what's going on. Right? Absolutely, Your Honor. I assume I'm going to ask the other side, I'm going to ask them, where in the final history do you find an explanation, either of steady state or any of this stuff? Where do you find any explanation by the applicant in the final history of why the equivalence in question are tangential? I didn't see any. They just said it avoids the prior op. It is, and the- Which creates the presumption that it wasn't rebutted. Correct, and under Biagro, in other cases, the burden is on the patent owner to show in the prosecution history why the alleged equivalent is tangential. Here, I would assert that the prosecution history shows positively that the alleged equivalent is not tangential. Now, the trial court seemed to think otherwise, but they have no explanation. The district court initially agreed, actually, with the defendant that the document of equivalence was not available because of prosecution history's- And then your adversary filed an opposition to your motion in limine. Actually, I believe the opposition- There's actually a record. It was lying there, but it's unclear whether the judge read it before he made his initial informal ruling. And in that opposition to the motion in limine, this notion of my patent only covers steady state and these two occasions are irrelevant sort of pops up, right? The opposition is where they made the alleged distinction between the temporal limitation and the level limitation. That's one that they've abandoned here on appeal. It was the one on which the district court ruled. Well, the procedural point I mentioned earlier would be that if that argument has any viability, you ought to find it in the final history, not in the response to a motion in limine. Absolutely, Your Honor. Can I move you on to the literal infringement question, the other piece of this? And that is just because we don't have time. Assuming there is a real claim, I understand the claim, what you allege to be the claim construction issue, which is no exceptions or exceptions. But isn't it possible or even likely that even if the district court gave you no exceptions or an exceptions claim, well, even if they gave you the construction you want, which is no exceptions or exceptions, there are exceptions? Yes. We want no exceptions. You want a claim construction that there are no exceptions. Wouldn't there still be kind of a factual issue on infringement involving whether or not the feedback signal controls the power during startup or not? That's precisely right. There would be a factual issue. So the claim construction, even that you're advocating, wouldn't necessarily, the issue of infringement would still have to go to the jury. There's a conflict in evidence between the two experts as set forth in our brief. On one side, O2 said that even with no exceptions construction, there was literal infringement. The experts on the other side said no, there actually is not control during the startup period. Therefore, under our interpretation of the patent, there is no literal infringement. But on that issue, you're not alleging that is a claim construction issue that the judge should have resolved? The factual issue is one for the jury. The claim construction. Why is that a factual issue and not a claim construction issue? It comes back to their whole argument that all they are is a steady state convention. And because there's so little juice flowing around during fire up, startup, or in lamp out, there isn't any feedback signal operating at all. There's just nothing to work on. The experts were in conflict as to whether there was a feedback signal and as to whether there was control. The key, though, is that... The dispute was whether or not these nano, whatever they are, tiny little signal, constitutes enough of a signal that it could be monitored and it could be ascertained that it wasn't below a predetermined level. But isn't that a claim construction question and not a factual issue? There's a factual issue as to what the circuit does, whether the diode conducts, for example. That was an issue... But the accused device. The accused device. The claim construction issue is whether this claim, with its only if clause, allows for some small amount of current that can exercise control. If the claim construction issue had been decided in our client's favor, what Biotech could have done is take the statements that were made by the expert for O2 and by the inventor and refute them based on the claim construction. As stated in 6394 of the appendix, the expert, Dr. Ryan for O2 Micro, stated that the only if applies only during normal operation and has nothing to do with the startup period. The inventor of the patent came on the stand at 6550 and 6557 and said that the only if limitation applies only during the startup and that the addition of the only if clause didn't add anything to the claim. The district court's failure to construe the claim deprived the defendants of the ability to point to that claim construction and say, no, that testimony is wrong. The failure to construe the claim allowed the jury to hear that testimony and very possibly rule on the basis of that. But if you look at it from the other perspective, which I gather is your opponent's view, is that the failure to interpret the claim as harmless error because the jury could have taken your claim construction and found literal infringement. Yes, but under the case law. Let me ask you this. Do you have a case from our circuit binding precedent that says it's legal error to submit the issue of literal infringement to the jury without first interpreting a disputed claim? Absolutely, Your Honor. What case of ours says that it's legal error? I mean, that is to say it's just wrong to do what happened here, which is to let the jury hear two different arguments about claim construction, let the case go to the jury where the evidence could sustain literal infringement even on your claim construction. Well, the Markman case, for one, says that it's a matter for the court to decide the claim construction. You can't allow the jury to hear two different claim constructions from opposing experts and allow the jury to decide the case. It's clear, absolutely, that it was the role of the court to decide the issue of whether the claims allowed for an exception. And that, in fact, was the issue, as the district court itself at the Markman hearing said. So the gist of this is whether there are exceptions allowed or not under the only if language. The problem was that he didn't then go ahead and decide that issue and offer a construction. And so your argument is it was legal error to send literal infringement to the jury without having had the claim construction? Absolutely. Given to the jury in a church. The only if provision was the only clause that was the only limitation that was disputed at trial. For the district court to have declined to construe those words was absolutely legal error. Let me move on just to the final issue before your time runs out. And that's this sort of waiver issue and objection to the form and so forth. It's your position that even if we were to agree with you on one of the two issues presented, on either DOE or literal, that's a sufficient basis for us to vacate the jury award and send it back. Absolutely. And that is true even though there was no explicit objection on your part to the verdict form. That is correct, Your Honor. Go ahead. There was an explicit objection to the jury instruction. On DOE. On the DOE. And I would encourage the court to look at the Herxcellanese versus BP case, in which Herxcellanese versus BP. In that case, this court found that not only did the party in that case waive the objection to the verdict form, but that party actually proposed the verdict form. So the court said, you can't object to the verdict form. You can't object to the fact that the issues weren't segregated in the interrogatory. But the court did consider and did rule on that party's objection to the jury instruction on that issue. In our case, we did object to the jury instruction as to willful infringement. It was all laid out in the motions and lemonade paper. The issue was quite clear that prosecution history estoppel in the defendant's view should prevent the giving of that instruction. And that issue has been preserved by the objection to that jury instruction. But that is a different issue, is it not, from an objection that would have lied to the general versus the specific verdict. That issue is just to tell the judge, your honor, you ought to segregate these out for judicial economy. And it's going to mess us up during appeal. So an objection that we're talking about here to a general versus a separate verdict is different than your DOE objection, right? It is a different objection. And that is not the basis for our appeal. Our basis for appeal is the giving of an incorrect doctrine of equivalence instruction. Mr. Young, you have ceded your time. But that is because you've been answering questions we've asked. So we'll give you your full rebuttal time on rebuttal. Thank you, your honor. Mr. Foley. Thank you, your honor. May it please the court. I'd like to address briefly the standard of review issue, then talk about the only if construction, the court's refusal to construe that phrase, then the doctrine of equivalence, and then finally what to do about Seagate. Because that was left as an issue here. Why did the district court, I take it that you view the district court to have refused to construe the only if limitation? Yes, the court. Why did you do that? Because it didn't have to. Because only if is a commonly understood phrase. Well, apparently not by what went on in this case, right? I mean, there are two opposite views of what only if means. So you continuously say there's an ordinary meaning. What is it? But that's not. The question is whether only if means more than what it means on its face. That wasn't the issue argued at trial. The issue argued at trial was not the meaning of only if. The issue argued at trial was the application of that to these devices. Just like in the biotech bio case. That's what we're talking about. If you read the colloquy that was going on between Mr. McPhail and the court, you wouldn't come to that conclusion. Well, I understand, Your Honor. But Mr. McPhail has said the district court finally says, I guess it boils down to whether I believe there could be an exception. Right. Hello? What the jury got. And that's really what we need to understand here. And what the jury was considering was a very, very deep and profound disagreement between the experts about how the accused device worked and whether or not. Don't you think it'd be useful in that case for the district court to have charged the jury as to what the claim in suit means? And indeed, it did. What it did not construe was the common phrase only if. It's a phrase that jurors, as Mentor teaches us, the job of the district court is to construe phrases and words only to the extent necessary to assist the jury in their understanding. But that mattered here because that was part of the phrase which applicant used to distinguish. Well, it was part of the amendment. They emphasized that it distinguished over the Gretzky prior art. They even underlined that part of the phrase in the amendment. Absolutely. Absolutely. And the phrase as a whole was the distinguishing feature. No doubt about that. But the question here is a different question. Do you also have to construe the word only if in a phrase that everyone understands perfectly what it means? Wait, wait, wait. Is it your view? I'm sorry to interrupt, but is it your view that what the jury understood only if to mean, which is that there are exceptions to only if? No, no. The jury wasn't. It could have found infringement without saying that there are exceptions to the only if, that the jury could have concluded there were no exceptions and still find infringement? Well, it depends. Are you saying? Literal. When you identify what your exceptions are, your exceptions are during lamp out or start up. Those are your equivalents. You don't need the doctrine of equivalence, right? Absolutely. If there are exceptions. If there are exceptions, then there's little or infringement, bang, gone. You don't need to deal with it. The reason why, let me try it this way. The reason why no exception language wouldn't have been helpful here, in fact, it could have had a very pernicious result, because then the argument would have been made to the jury, don't concern yourself with the fact of whether or not there actually is a feedback current occurring during that time. They're talking to you about an exception for that period of time. And that's not what was argued. What was argued was the specific issue that is represented here in this conditional phrase, only if said feedback signal is above a predetermined threshold. Was there a feedback signal working during that time? That was the issue. Nobody argued, in fact. You certainly could have amended your claims to say just that, if you were trying to get away from Gradsky, instead of saying only if. You could have amended your claims to say what you just said now, which is that there's not enough of a signal going, there's no real feedback, and consequently. Well, actually, it did, because the point. That wouldn't have done you any good, because Gradsky is monitoring during a lamp out and startup. Right. And so ultimately, the issue, the factual issue, about the accused devices becomes, is there a feedback signal? And it's not the meaning of only if. It's a common conditional phrase. Certainly, that's not what the basis was for explaining to the examiner why you got away from Gradsky. OK. This is another issue. I mean, that's the document. Your theory is mixed literal infringement and DOA, depending on what you feel comfortable arguing at any given point in time. Well, I know I think. Is that a Freudian slip when you said DOA instead of DOE? Is DOE DOA? Let me ask you a related question, because I know the time is running out. There is an argument here that the appellant doesn't get a black letter law, which is if a case goes to a jury on two theories and you can show that one was legally infected, then you get a new trial. That's what I'll call the black letter law. Right. And I take it to be, your argument is, because there wasn't an objection to the jury form, the general jury form, that under Fifth Circuit law, the appellant is barred from access to the black letter law. Absolutely. Do you have a Fifth Circuit case that supports that proposition? That you must make an objection to the jury form. Well. Yes or no? No, I do not have a case that specifically speaks to the verdict form. What I have, what I have, Your Honor, is a distinction. OK, let me ask you this question. Are you familiar with Smith v. Southern Airways? I'm not, Your Honor. That's cited in Crist. You read Crist? I read Crist, Your Honor. I didn't read the case. It's cited in Crist. I did not read the Smith case. No, Your Honor. I'm sorry. Smith's the case in which all the appellant did was object to jury instruction on a particular issue. He said, you shouldn't be sending this issue to the jury, Your Honor. Right? Right. And guess what happened? Fifth Circuit gave him access to the black letter law. So it's just like what happened here when your adversary objected to the charge on DOE. OK, well, let me explain what's different here. And it's also an important distinction with Crist. What's different here is that there was a specific time when the verdict form was discussed. This wasn't a futility situation in which the court, as in Crist, said, no, this is your one time. I understand that. But I mean, Smith doesn't deal with futility. There are several other cases in the Fifth Circuit where there's no discussion at all of futility. It simply dealt with a situation where there was an objection to a jury charge saying, Your Honor, you shouldn't send this theory to the jury because we should be winning as a matter of law. But this merges, then, with the question of harmless error. How, if you don't preserve the issue by allowing it? You certainly agree that your adversary preserved the DOE issue. Preserved the instruction issue, Your Honor. But at the moment when the instruction issue was to say, you shouldn't be giving an instruction at all. That's correct. Because you should have granted my motion in limine. The jury should not even be allowed to hear DOE. Exactly. But at the moment when they were called upon to give their position on the verdict form, they said, here's our problems with it. Insert a little phrase here. And we want to have a question that's direct. And they said, we would like a charge on literal infringement, which they offered. On direct infringement. On direct infringement. Direct infringement. But it would have been rather foolish for them to be offering a charge on DOE. Not at all, Your Honor. No. Really? No. What they, it wouldn't have been foolish. It would have been entirely appropriate. And say, DOE shouldn't be going to jury at all. It shouldn't be at all. No. Because at that point, the court was giving the DOE instruction to the jury. And the question is, how do you preserve your position? How do you preserve your opportunity to argue later on that this was prejudicial? And the only way that you can do that is to request a verdict form that splits the issue. That's not what the Fifth Circuit law says. That's why I asked you. No, I understand. But the Fifth Circuit hasn't specifically addressed this issue where you have a situation, as we have here at 7-119 of the appendix, where they're called upon, give us, the court, your position on the verdict form. And they specifically said A and B, but never C. And under those circumstances, how can they just lie on the weeds and then say, now, well, this is error that necessarily affects the judgment and requires reversal? Then that would be an interesting way to put it. Now, the whole question of whether access to the single ground law is barred is mooted if the court were to decide that it was legal error to send both issues to the jury. Right. I mean, preserved is the issue of whether or not the motion in limine should have been granted yes or no. Right. So let's assume, for purposes of argument, you don't want to hear this, but for purposes of argument, we decided that the judge should have granted the motion in limine on DOE and that it was legal error to send literal to the jury without interpreting only if. In that case, the jury verdict is vacated, and we'd go back for another trial on literal. And in that hypothetical, then you wouldn't have the situation where one ground was right and one down. You don't have to worry about the waiver. You'd have both of them being wrong. But my argument assumes that literal infringement was properly done. Your argument assumes there was no harm and there was nothing wrong. It was perfectly fine for the judge to say, down here in Texas, our people are really smart. They know the difference between only if and not only if. Well, I think that's true. So as he said, I think that case you're citing to me makes a lot of sense. That is to say, no exceptions. He lets it go to the jury. But again, the issue has to do with, do you construe that phrase versus do you give the jury that common English phrase and let the fight be about how the devices work? Right, but if the bottom line had been that the district court bought your argument that solid state is all you're talking about, and if there's such an insignificant amount of current going about, there's never any need that nothing happens in the feedback circuit. So there aren't any exceptions in that respect. That's, I didn't see any of that argument being given to the district court judge as how we should construe the claim. Well, again, we weren't, you know, they weren't arguing exceptions down there. They were arguing the lack of the existence of the condition. Did I miss something? There wasn't a signal. The colloquy that I've been talking about is at A70-261 in there. It's where Mr. McPhail was talking about his theory of the claim construction. I gather that's the defendant's lawyer. And then at the end of all that, the question comes to your side, whether they've got anything to say. And he says, well, Mr. Cherian, you used up all your time in the opening. There's nowhere but. Was there any discussion by Mr. Cherian before the colloquy between Mr. McPhail and the court about Mr. Cherian's view of claim construction of only if? I believe in front of the jury, there was no discussion about claim construction at all. And that would have been, at least theoretically, the trigger for the court to say, all right, you're putting some issue of claim construction in front of the jury. I now have to tell the jury what it means. Was this conversation between Mr. Cherian and the court going on with the jury out of the room? As far as I know, yes, Your Honor. Well, do you know, yes, did you try the case? No, I did not, Your Honor. I did not. I was unable to find, in this probably pretty thick volumes, any reference to where your side was telling the trial judge what the claim, what only if really meant. Can you point to me in this record where that conversation was going on? Either at the Markman hearing or in front of the jury or both? No, Your Honor. Our position was consistent that it did not need construction. Because it's a simple conditional word. And again, the fight. But there wasn't any explicit argument that it didn't need construction because it's a simple word. And if you really understand the patent as one of ordinary skill in the art of wood, it's a solid state patent. And consequently, there's no activity in the feedback circle in these tiny amounts of current. It wasn't in that context. Because that's your theory now, right? Isn't that your theory now? That is not my theory, Your Honor. Not the way you've stated it. How is it in the way you state it? My theory is that only if does not need construction because that by itself is a simple phrase. What needs attention from the jury and what was decided here had to do with the operation of the accused's device. Assuming that it was a clear conditional phrase. It's a ratchet. It's either this or it's not. And so the issue, it's a false argument to inject. And in fact, I really think when Bytek points to the record arguments at pages 14 to 15 of its reply, we really need to look at those. Because those points were mainly made to the court, not in front of the jury. So you would not, if given the opportunity, you would not have pressed a definition of only if to say only if has exceptions. You would have conceded that only if has no exceptions. And that would have made a difference. I would have fought against if this no exceptions approach had been suggested at the trial. I would have fought against that because two things. Well, it was suggested. I mean, we have a quote from the district court who says it boils down to whether I believe there can be an exception. So that it was. No, no, no, no. I'm saying specifically, I'm sorry, Your Honor. What I meant was if they had suggested, Your Honor, we propose the following construction for only if. And it is this and no exceptions. I would have objected to that. First of all, because it's not necessary because the phrase includes the common meaning of the word is there. And secondly, there's. Why did the court say it, 7261? Well, it boils down to whether I believe there can be an exception. McPhail, yes. Not whether Mr. Cherian believes there can be exception. So it must have been Mr. Cherian must have said something about exception. But this highlights. I'm sorry, Your Honor. What did Mr. Cherian say to the court about whether there could or could not be an exception to only if? What was in there? Mr. Cherian is counsel for your client, right? Yeah. What page are you referring to? 7261. In volume two. Right. This is a big, long talk from the defendant with the trial judge about only if. Only if. And there are no exceptions for lamp out or start. Right. This is the claim construction hearing. We're not at trial at this point. That's what I'm trying to get at for the claim construction we're talking about. So Mr. Cherian must have said something about exception. Yes. I'm not suggesting that there was no discussion at the claim construction hearing about exceptions. I'm trying to address. What was your client's position about exceptions during the claim construction hearing? That you didn't need to tell the jury anything else in addition to giving them the phrase only if. Because it wasn't necessary for them to understand the claim and to apply it properly. And what I would have said at the time if they had said please add quote no exceptions to this. You're saying you don't know that's right. Because you can't point to us in the record anywhere where Mr. Cherian saying this. Well it was. Be very careful not to have attorney arguments or get in the record. And I asked you where in the record did Mr. Cherian talk about whether they'd be an exception. I guess your answer is you don't know. I am not familiar with any place where he said that your honor. All I'm all I'm pointing out is as you would have said if you'd been at the Markman hearing which is irrelevant to what we're trying to find out. Well actually I'm trying to. I hope it's not a relevant issue. We're trying to address an issue of law. I mean which you would have told the judge had you been on the Markman hearing. It's got to be irrelevant to our trying to figure out whether the judge should or should not. Having listened to two sides talking about whether or not there was or was not an exception. The issue for us is whether the judge should have picked. Absolutely right. And he didn't pick. And I apologize for couching it in that way. What I'm trying to point out however is that it is appropriate for the trial judge to deny a request to add something like no exceptions to this. In part not only because it's not necessary but in part because it could be misused in front of the jury to point them away from a legitimate argument. And that's part of the discretion of a trial judge when it comes to. Your bottom line argument was it doesn't make any difference. If there are exceptions we win and if there are no exceptions we win. So it doesn't make any difference how you construe the claim. Well that's true too. That's where you are at the very bottom line isn't it. Indeed if you read the record here I think that leaps out at you. I'd like to just and I'm sorry that I'm over but I do want to make one final point. One final point is about Seagate and what to do on the issue. In their reply BITEC argues that it had neither standing nor incentive to appeal. But in fact if you look at the injunction, the permanent injunction it was based in part on willfulness and therefore the issue is right, should be considered here. And because the failure to file to renew the Rule 50 motion resolves all issues of substantiality of evidence, that should be affirmed. Has there been a remand or has the judge looked at the willfulness issue through the lens of Seagate since the notice of appeal and the brief were filed here? Not expressly, Your Honor. I thought it was it's pending. I mean as of the brief, someone in the brief gave us a footnote to say it was pending on reconsideration. The issue, Your Honor, is in front of the court or would be in front of the court on the attorney's fee issue. But we're dealing here. Were there any damages? No. No damages were in this case. And that's my point. You only have an injunction, right? Yes. And so your argument is the only place where willfulness BITE takes a piece out of your hide is on the attorney's fees and the cost. Yes. Driven by willfulness means exceptional case. Exceptional case means how much charge. And that's an issue that's typically for the court's discretion. Whereas the Seagate opinion and all of the instructions that we got from the Supreme Court were bottomed on its concern about punitive damages. And that's not at issue here. And so it's really all that happened is the court asked the jury for a willfulness determination that it could use later on on issues that were within its own discretion on attorney's fees and the injunction had nothing to do with enhanced damages. And so all those issues that animated the Supreme Court What you're basically saying to us is we ought to stay our hand and just make clear that that issue is preserved for the appeal on the attorney's fees. No. I'm sorry. You're saying that Seagate ought not to apply to this case at all, right? Yes. It shouldn't concern Because the whole rationale. So you're saying we ought to carve out an exception to Seagate which says because of our rationale in Seagate it only applies to cases where there's a ward of enhanced damages. No. I'm not going that far. I'm simply suggesting there need not be a remand here as to SPI which is the only party that actually appealed on this having the opportunity to do so. As to the other two parties, it's game over because they had the opportunity. It was right and they did not appeal it here. And as to SPI, I'm just suggesting there's no reason to remand because it's not important since Seagate since there was no issue of enhanced damages. And if heaven forbid from your perspective we were to rule that the jury that there was legal error on both theories that went to the jury then the judgment is vacated and the underpinning for the attorney's fees falls away as well. And you're back to square one, right? Of course. Yes, that's right. Thank you, Mr. Cooley. Thank you, Your Honor. I think Mr. Young has some rebuttal time, four minutes. And Mr. Carr wants a minute to have the last word. I believe Mr. Carr will now cede his one minute to me. We'll see whether I need it. I do want to answer Judge Clevenger's question about what was said at the Markman proceeding with respect to the position on the meaning of only if. And I would point the court to A321 and 322 of the appendix, which does set forth O2 micro's view of only if and whether exceptions are allowed. At that brief, in that brief, O2 micro stated as follows. To the extent that defendants believe that some rare anomalous or transitional mode of operation that exists for an insignificant amount of time will preclude infringement, they are wrong. Analog circuits and claims relating thereto by their very nature cannot capture every anomalous situation without departing from the essence of the invention. So what O2 micro says at that time is that there can be exceptions that don't violate the essence of the objection. Rare anomalous. Right. And that's what they said the startup period was. Rare, anomalous, transitory. That was clearly a claim construction issue. Well, and if I were you, I'd read the sentence that follows that, which says, given blah, blah, blah, the court should reject defendants' proposed construction for only if. Absolutely. And what O2 micro didn't say here, but which ended up being the case, is that they were allowed by the court's failure to construe the claim to argue their own construction through their witnesses, as I previously quoted. And it may well be that in ruling on literal infringement or the doctrine of equivalence, the jury believed that to be the proper construction of the only if language. And that was incorrect. Mr. Pooley noted that the court did construe the larger phrase in which the words only if appear. And the problem with that, of course, is that the construction simply repeated the words only if without giving any elaboration or meaning to those words. Since those two words were the key to the case, as this brief that I just quoted illustrates, it was incumbent upon the district court to construe that phrase. And the failure to do so was reversible error. And is it your view that there is no ordinary meaning to only if? The words certainly are ordinary words. We believe that in the context of the claim, as the claim would be construed by one of skill in the art, it does require construction. Certainly, the word only is an ordinary word. But it didn't keep the courts from construing the word in the context of the Electa case, for example, or the Lumar case. And there are many other cases where the issue is the crux of the case, where the simple ordinary word is going to decide the result of the case that a construction is appropriate and required. But you conceded on your initial argument that it wouldn't decide the case, that there would still be an infringement issue left, a factual infringement issue left. Oh, well, it would not decide the case at this level, Your Honor. It would decide the case at the district court level, depending on the facts found by the jury. There was a conflict. But that, in and of itself, doesn't lead to summary judgment or decision of the case. Oh, no. No, I'm not talking about summary judgment. I'm simply talking about what the jury was given as the rule by which they should decide the case. All we know is that they decided it one way without getting the rule. And all we're asking for is that in order for the jury correctly to decide the case, whichever way they decide it, they have to get the right rule. And here, they didn't get that rule. And that's the fun of it. And you realize that you may be in jeopardy after the claim construction when the factual issue is presented to the jury? In jeopardy? The claim construction, you don't quite know how it's going to come out. I mean, if the trial judge says, well, in the context, I believe they're exceptional, right? The case result may vary depending on how the construction is done. And if, on the other hand, the trial judge says, well, there are no exceptions because this is a solid state sort of circuit and these minor things don't count at all, you're not going to like that either. But I think you have helped the court by explaining that there is a factual issue on claim construction, regardless of which way the district court judge goes. There's a factual issue on literal infringement. That's what I mean, on literal infringement. Yes. And I think your honor is absolutely right. The claim construction that does get decided on remand, if there is a remand, will have an important effect on the outcome of the case. The problem here, of course, is that that wasn't done in this case, and it should have been done. Can I ask a question? Perhaps you can or can't answer it. I understand that there is a pending case in this court that deals with the attorney's fees. Yes. What I don't understand, there appear to be a large number of cases, three or four in California, two or three in California, two or three in Texas, that involve the same plaintiff. Is that correct? There is a case. Maybe I should be asking that aside, but it was too late. I can tell you what I know. It was cited in the red brief. Yes, there is one case before this court that's stayed, I believe. And there are several cases in the district courts. But we don't know whether this case, the resolution of this case on this claim, is actually going to affect those other cases or not. I guess you wouldn't know because you're not. I don't know. I don't know, your honor. I would make one more, a couple more observations. Very, very briefly, please. OK. One as to what was said by Bytec with regard to the verdict form. I would urge the court to look at 7119. You'll see there actually was an objection to the verdict form, but it was very general and did not go into this issue of literal versus document equivalence. And the second point? With respect to the pending proceedings in the district court, there is a pending Rule 60B motion for relief from the judgment relating to the original judgment, and there are a number of motions pending before the district court on the attorney's fee issue. Thank you, Mr. Young. Thank you, your honor. The case was well argued, and I commend plaintiffs for a right. I just want to say one thing, if I could. Mr. Pooley, I could, you know how sometimes you can hear yourself echoing in your own ears after you've said something. I meant no offense to you in the tone of my voice. As you may know, I tend to be a little aggressive in oral argument. I found this to be a very difficult case, and if I offended you with the tone of my voice, I apologize. Not at all, your honor, and I enjoyed the argument. Thank you. The case will be taken under revising.